# 22-110(L)

## 22-113 (Con), 22-115 (Con), 22-116 (Con), 22-117 (Con), 22-119 (Con), 22-121 (Con), 22-203 (Con), 22-299 (Con)

# United States Court of Appeals

### for the

# Second Circuit

PURDUE PHARMA L.P., PURDUE PHARMA INC., PURDUE TRANSDERMAL TECHNOLOGIES L.P., PURDUE PHARMA MANUFACTURING L.P., PURDUE PHARMACEUTICALS L.P.,

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN CASE NOS. 21-CV-7532 (CM), 21-CV-7585 (CM), 21-CV-7961 (CM), 21-CV-7962 (CM), 21-CV-7966 (CM), 21-CV-7969 (CM), 21-CV-8034 (CM), 21-CV-8042 (CM), 21-CV-8049 (CM), 21-CV-8055 (CM), 21-CV-8139 (CM), 21-CV-8258 (CM), 21-CV-8271 (CM), 21-CV-8548 (CM), 21-CV-8557 (CM) and 21-CV-8566 (CM)
(HONORABLE McMAHON, JUDGE)

**THE AD HOC GROUP OF INDIVIDUAL VICTIMS' OPPOSITION TO THE U.S. TRUSTEE'S MOTION TO STAY ISSUANCE OF THE MANDATE PENDING DISPOSITION OF PETITION FOR WRIT OF CERTIORARI**

WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 819-8200
Fax: (212) 354-8113
J. Christopher Shore
Michele J. Meises
Alice Tsier

ASK LLP
60 East 42nd Street, 46th Floor
New York, New York 10165
Tel: (212) 267-7342
Fax: (212) 918-3427
Edward E. Neiger
Jennifer A. Christian

*Co-Counsel for Ad Hoc Group of Individual Victims of Purdue Pharma, L.P., et al.*

IMBRIUM THERAPEUTICS L.P., ADLON THERAPEUTICS L.P., GREENFIELD BIOVENTURES L.P., SEVEN SEAS HILL CORP., OPHIR GREEN CORP., PURDUE PHARMA OF PUERTO RICO, AVRIO HEALTH L.P., PURDUE PHARMACEUTICAL PRODUCTS L.P., PURDUE NEUROSCIENCE COMPANY, NAYATT COVE LIFESCIENCE INC., BUTTON LAND L.P., RHODES ASSOCIATES L.P., PAUL LAND INC., QUIDNICK LAND L.P., RHODES PHARMACEUTICALS L.P., RHODES TECHNOLOGIES, UDF LP, SVC PHARMA LP, SVC PHARMA INC., THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA, L.P., ET AL., MULTI-STATE GOVERNMENTAL ENTITIES GROUP, AD HOC COMMITTEE OF GOVERNMENTAL AND OTHER CONTINGENT LITIGATION CLAIMANTS, AD HOC GROUP OF INDIVIDUAL VICTIMS OF PURDUE PHARMA L.P., ET AL., RAYMOND SACKLER FAMILY, MORTIMER-SIDE INITIAL COVERED SACKLER PERSONS,

*Appellants.*

– v. –

THE STATE OF WASHINGTON, THE STATE OF MARYLAND, THE DISTRICT OF COLUMBIA, THE CITY OF GRANDE PRAIRIE AS REPRESENTATIVE PLAINTIFF FOR A CLASS CONSISTING OF ALL CANADIAN MUNICIPALITIES, THE CITIES OF BRANTFORD, GRAND PRAIRIE, LETHBRIDGE AND WETASKIWIN, THE PETER BALLANTYNE CREE NATION ON BEHALF OF ALL CANADIAN FIRST NATIONS AND METIS PEOPLE, THE PETER BALLANTYNE CREE NATION ON BEHALF OF ITSELF, AND THE LAC LA RONGE INDIAN BAND, U.S. TRUSTEE WILLIAM K. HARRINGTON, THE UNITED STATES TRUSTEE FOR REGION 2,THE STATE OF CONNECTICUT, RONALD BASS, THE STATE OF CALIFORNIA, THE PEOPLE OF THE STATE OF CALIFORNIA, THE STATE OF OREGON, THE STATE OF DELAWARE, THE STATE OF RHODE ISLAND, THE STATE OF VERMONT, ELLEN ISAACS, ON BEHALF OF PATRICK RYAN WROBLEWSKI, MARIA ECKE, ANDREW ECKE, RICHARD ECKE,

*Appellees,*

The Ad Hoc Group of Individual Victims (the "**Ad Hoc Group**") of Purdue Pharma L.P., *et al.* (the "**Debtors**" or "**Purdue**"), submits this objection to the motion of United States Trustee William K. Harrington (the "**U.S. Trustee**") to stay the issuance of the mandate in this appeal pending disposition of a potential petition for a writ of certiorari to the United States Supreme Court (the "**Motion**").

The Ad Hoc Group is comprised of over 60,000 individuals who were injured by direct exposure to Purdue opioid products and who have filed personal injury claims in the Debtors' chapter 11 cases (the "**Chapter 11 Cases**"). Together, these individuals make up over half of all individuals who filed personal injury claims in the Chapter 11 Cases (the "**Personal Injury Victims**") and approximately 50% of the total voting creditor body in the proceedings below. The Ad Hoc Group was materially active in both litigation and mediation processes leading to the confirmation of Purdue's chapter 11 plan of reorganization (the "**Plan**"), and ultimately was fully supportive of the Plan, including the third-party releases that the U.S. Trustee is challenging. Indeed, 96% of the Personal Injury Victims who voted on the Plan, voted "yes."

In exchange for their support, the Plan provides for up to $750 million dollars for direct injury reimbursements to Personal Injury Victims, over $6 billion dollars for critical programs to abate the opioid crisis, the disclosure of millions of documents that provide an open historical record so that similar corporate

catastrophes can be avoided, and the removal of Sackler Family[1] members, who had owned and operated Purdue for decades, from the prescription opioid business. Special Appendix at 3 (Dkt. Nos. 323-332) (hereinafter "SPA").[2] Based on a detailed record before it, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") found that both compensation and abatement funds available to Personal Injury Victims are critically needed to combat the opioid epidemic that continues to wreak havoc in the United States. *See* Hr'g Tr. dated Nov. 9, 2021 at 131:16-17, *In re Purdue Pharma, L.P.*, No. 19-23649 (Bankr. S.D.N.Y.) (hereinafter "Nov. 9 Hr'g Tr.") ("The record is crystal clear that every dollar counts because there is no surplus."); *id*. at 274:2-11. In rejecting the U.S. Trustee's motion for a stay pending appeal of its order confirming the Plan, the Bankruptcy Court recognized—based on the uncontested record before it—that Plan distributions were to be used "both for the immediate needs of the individual victims and for abatement purposes at a time when every dollar counts. *And as time passes, the problem only gets worse* . . . . [O]pioid deaths have been increasing over the last

---

[1] "Sackler Family" refers to the Mortimer D. Sackler Family (also known as 'Side A' of the Sackler family) and the Raymond D. Sackler Family (also known as 'Side B' of the Sackler family.

[2] Decision and Order on Appeal by the United States District Court for the Southern District of New York, *In re Purdue Pharma, L.P.*, No. 21-cv-7532 (S.D.N.Y. Dec. 16, 2021), SPA-1-142 at 3 ("Eventually, the parties crafted a plan of reorganization for Purdue that would, if implemented, afford billions of dollars for the resolution of both private and public claims, while funding opioid relief and education programs that could provide tremendous benefit to the consuming public at large . . . .").

two years at a very disturbing level, roughly 30 percent nationally, such that in the last year of March to March, roughly 200 opioid related overdose deaths occur each day." *Id.* (emphasis added). Based on this record, the Bankruptcy Court found that, "at some point, a stay can lead to additional deaths if it results in a meaningful delay of funds," *id.* at 131:2-3, and that "there would be substantial harm to the Debtors' creditors in the event of a stay [of distributions] beyond the date on which the Debtors would otherwise be prepared to consummate the Plan . . . ." Joint Appendix at 1421 (Dkt. Nos. 712-741) (hereinafter "JA"). The Bankruptcy Court further noted, "I don't think there's any doubt that the cost for a lengthy delay of, you know, several months to a year or two really is dramatic here in terms of dollars and cents. So it would seem to me that, as time goes by, the need for a bond grows dramatically to offset the vindication or not of the Appellant's right on appeal." Nov. 9 Hr'g. Tr. at 120:24-121:4.

These factual findings, which the U.S. Trustee has never challenged, were made in November 2021. Since that time, the U.S. Trustee has unapologetically stood between Personal Injury Victims and critically needed relief, using this case as a vehicle for seeking to foster a policy goal of prohibiting nonconsensual third-party releases in bankruptcy cases generally. That campaign needs to stop.

In assessing the requested stay of the mandate under Rule 41 of the Federal Rules of Appellate Procedure, this Court considers whether (i) a petition for a writ

of certiorari would present a substantial question and (ii) there is good cause for a stay. Fed. R. App. P. 41(d)(1). As to the latter, the movant must show that irreparable harm will result from denial of a stay. *Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009). But "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *United States v. Silver*, 954 F.3d 455, 460 (2d Cir. 2020) (internal quotations omitted). As to the former, the Ad Hoc Group agrees with the Official Committee of Unsecured Creditors (the "**UCC**") and the Debtors that the U.S. Trustee fails to meet the high standard for presenting a substantial question and, therefore, will not repeat those arguments. Instead, the Ad Hoc Group will address the relative harms in the Chapter 11 Cases. *See Conkright,* 556 U.S. at 1402.

On the one hand, any further delay presents a clear and immediate harm to Personal Injury Victims and opioid-affected communities.[3] The record below is replete with testimony regarding the risks of delaying distributions of these much needed-funds. *See, e.g.,* JA-1335-44, ¶ 24 (C. Juaire, a member of the UCC, testifying that "community organizations that already serve people with OUD [opioid use disorder] are in desperate need of funding to maintain day-to-day

---

[3] The U.S. Trustee is aware of the harm that it is causing. Mot. at 3 (conceding that "[t]he opioid crisis is an urgent national problem [and that] continuing to litigate this question would delay the plan's confirmation and thus the distribution of benefits to opioid victims.").

operations"). As one member of the UCC testified with respect to the concrete harms of delaying the Plan's implementation:

> Perhaps if these Appellants [including the U.S. Trustee] had to tell people suffering from OUD that there simply is no transportation to get them to a treatment center because the Appellants want more time to bring their appeals (or fight over naming rights or documents), they would feel differently. Or perhaps if they were the ones who watched two different community organizations in Kalamazoo, each of which was established to provide different necessary services, like counseling, close in the last 90 days, they would rethink their position. Or perhaps if they were the ones who saw another organization, on top of the other two, be abruptly displaced and forced to establish a GoFund Me in order to continue providing services, including harm reduction, peer support, naloxone, and clean syringes, they would feel differently . . . Every passing day that goes by results in more harm, more death, more psychological and physical pain, more trauma, and more stress.

JA-1345-53, ¶¶ 15-16.

In sum, if recent trends continue, in the next two months, while the U.S. Trustee is drafting its petition for certiorari, over 13,000 people are expected to die of an opioid overdose.[4] That is plainly irreparable.

In contrast, all that is at stake for the U.S. Trustee is the opportunity to frame what it claims is a "critical question of bankruptcy law" (Mot. at 20) without the

---

[4] The Center for Disease Control and Prevention reports that, based on provisional (and likely under-reported) data for the 12-month period ending February 2023, there were 79,644 reported opioid overdose deaths in the United States, averaging out to 6,637 deaths per month. *See* Center for Disease Control: National Center for Health Statistics, *Provisional Drug Overdose Death Counts*, https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm (last updated Feb. 15, 2023).

need to address the potential applicability of the equitable mootness doctrine. *Id.* at 17-18. As the U.S. Trustee admits in its Motion, it is only seeking a stay "out of an abundance of caution to preserve the Supreme Court's ability to review the forthcoming petition without needing to address threshold questions about the validity and applicability of the equitable mootness doctrine." *Id.* at 4. In short, the balance here is between loss of lives and a claimed "abundance of caution."

The U.S. Trustee's potential need to address the applicability of equitable mootness is not "irreparable harm" under the existing Rule 41 jurisprudence. The U.S. Trustee does not cite a single case in which the Supreme Court has dismissed an appeal before it on equitable mootness grounds. In any event, even if the Supreme Court were to dismiss, the U.S. Trustee can nonetheless pursue its policy arguments against third-party releases in another bankruptcy case—preferably one in which lives do not hang in the balance.

If, despite all of this, the U.S. Trustee still insists on delaying compensation to Personal Injury Victims for months, to write and submit a petition for a writ of certiorari that it has had over a year to write, it should at least be willing to compensate victims for the inevitable harm its delay will cause. Under Rule 41, "the court may require a bond or other security as a condition to granting or continuing a stay of the mandate." Fed. R. App. P. 41(d)(3); *see also California v. Am. Stores Co.*, 492 U.S. 1301 (1989). Although the Ad Hoc Group expects the U.S. Trustee

to assert that it is not required to post a bond, nothing in Rule 41 or any statute prevents the U.S. Trustee from voluntarily posting a bond to balance the harms from its delay. Should the U.S. Trustee refuse to do so—*i.e.*, if its abundance of caution only extends to policy arguments and not actual lives—the Court should deny the Motion because, absent a bond, Personal Injury Victims (and other creditors) will have no other source of recovery for the harm caused by delay.[5] *See* Nov. 9, 2021 Hr'g Tr. at 278:9-11 (denying U.S. Trustee's request for a stay that would last through the entire appellate process because it would not post a bond).

## **CONCLUSION**

The Ad Hoc Group respectfully requests that the Court deny the Motion and grant the Ad Hoc Group such other and further relief as is just.

                                          Date: New York, New York
                                                      July 17, 2023

---

[5] *See Tribune Media Co. v. Aurelius Cap. Mgmt., L.P.*, 799 F.3d 272, 281 (3d Cir. 2015) ("The purpose of requiring such a bond in a bankruptcy court is to indemnify the party prevailing in the original action against loss caused by an unsuccessful attempt to reverse the holding of the bankruptcy court.") (internal quotations and citations omitted). *See also Triple Net Invs. IX, LP v. DJK Residential, LLC (In re DJK Residential, LLC),* No. 08-10375 (JMP), 2008 WL 650389, at *5 (S.D.N.Y. Mar. 7, 2008) (rejecting stay request where the size of a bond was prohibitive to movant because, [a]bsent a bond, such injuries [from delay] would be substantial and irreparable"); *ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),* 361 B.R. 337, 368 (S.D.N.Y. 2007) ("[I]f a stay pending appeal is likely to cause harm by diminishing the value of an estate or endanger [the non-moving parties'] interest in the ultimate recovery, and there is no good reason not to require the posting of a bond, then the court should set a bond at or near the full amount of the potential harm to the non-moving parties.") (internal quotations omitted).

| | |
|---|---|
| */s/ J. Christopher Shore* | */s/ Edward E. Neiger* |
| WHITE & CASE LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Tel.: (212) 819-8200<br>Fax: (212) 354-8113<br>J. Christopher Shore<br>Michele J. Meises<br>Alice Tsier | ASK LLP<br>60 East 42nd Street, 46th Floor<br>New York, New York 10165<br>Tel.: (212) 267-7342<br>Fax: (212) 918-3427<br>Edward E. Neiger<br>Jennifer A. Christian<br><br>*Co-Counsel for Ad Hoc Group of Individual Victims of Purdue Pharma L.P., et al.* |

# **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

I certify that:

1. This Response complies with the type-volume limitations set forth in Federal Rule of Appellate Procedure 27(d)(2) because it contains 2007 words, exclusive of the portions of the Response exempted by Federal Rule of Appellate Procedure 32(f), as determined by the word counting feature in Microsoft Word.

2. This Response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:    New York, New York
          July 17, 2023

                                              */s/ J. Christopher Shore*
                                              J. CHRISTOPHER SHORE

# **CERTIFICATE OF SERVICE**

I hereby certify that, on July 17, 2023, this Opposition was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system, except for the following, who will be served by e-mail and USPS:

Ellen Isaacs, on behalf of Patrick Ryan Wroblewski
P.O. Box. 6553
Delray Beach, FL 33482
E-mail: ryansopc@gmail.com

Ronald Bass
450 Little Place, Apt. 53
N. Plainfield, NJ 07060
E-mail: ronaldbass12345@gmail.com

Maria Ecke
8 Glenbrook Drive
West Simsbury, CT 06092
E-mail: sagitarianm2004@yahoo.com

Andrew Ecke
18 Meadowlark Rd.
West Simsbury, CT 06092
E-mail: sagitarianm2004@yahoo.com

Richard Ecke
18 Meadowlark Rd.
West Simsbury, CT 06092
E-mail: sagitarianm2004@yahoo.com

Dated: July 17, 2023
New York, New York

*/s/ J. Christopher Shore*
J. CHRISTOPHER SHORE